## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEPHEN KENT BLOOM, | ) | |
| | ) | |
| **Plaintiff,** | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 01-3450-KHV |
| | ) | |
| K. RUHNKE, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Stephen Kent Bloom brings suit against K. Ruhnke, accounting specialist for the Kansas Department of Corrections ("KDOC"), for violation of constitutional rights. Under 42 U.S.C. § 1983, plaintiff specifically asserts that defendant violated his right to free speech by arbitrarily and capriciously applying Internal Management Policies and Procedures ("IMPP") 11-101. In the alternative, plaintiff complains that defendant violated his right to free speech by applying that regulation "in a retaliatory fashion because [he] had filed a certain prison grievance." Pretrial Order (Doc. #168) filed May 4, 2006. This matter is before the Court on plaintiff's Motion For Judgment On The Pleadings (Doc. #170) filed May 11, 2006 and Defendant's Motion For Summary Judgment (Doc. #172) filed May 15, 2006. For reasons stated below, the Court overrules plaintiff's motion and sustains defendant's motion.

### I.     Plaintiff's Motion For Judgment On The Pleadings (Doc. #170)

Plaintiff seeks judgment on the pleadings, arguing that Documents #16 and #17 support his claims.[1] See Memorandum Supporting Motion For Judgment On Pleadings ("Plaintiff's Memorandum") (Doc. #171) filed May 11, 2005 at 2.   Because plaintiff relies on matters outside the pleadings, the Court addresses his motion as one for summary judgment under Rule 56, Fed. R. Civ. P.   See Rule 12(c), Fed. R. Civ. P.

Plaintiff argues that he is entitled to judgment on the following claims: (1) that defendant "violated 'custom' that allowed exceeding spending limit for 'legal costs;'" (2) that defendant "falsely moved [plaintiff's] request from 1st class postal metering rate to certified metering rate;" and (3) that defendant "then made a second false writing, 'falsely claiming [plaintiff] had exceeded max. spending limit.'" Plaintiff's Memorandum (Doc. #171) at 2-4.  Defendant responds that (1) plaintiff has not produced sufficient evidence to prove his claims; and (2) it has produced evidence which controverts plaintiff's claims.  The Court agrees, and overrules plaintiff's motion for substantially the reasons stated in the Memorandum In Support of Defendant's Response To Plaintiff's Motion For Judgment On The Pleadings (Doc. #174) filed June 1, 2006.

## II.     Defendant's Motion For Summary Judgment (Doc. #172)

Defendant seeks summary judgment on plaintiff's claims.  Plaintiff has not responded.  Under Rules 6(a) and (e), Fed. R. Civ. P., and D. Kan. Rule 6.1(d)(2), plaintiff had until June 7, 2006 to file a response. Pursuant to D. Kan. Rule 7.4, "[i]f a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted

---

[1]        Documents #16 and #17 are a declaration and supporting exhibits which plaintiff filed on October 3, 2002, in support of an earlier motion for summary judgment.

without further notice."  On this record, summary judgment is appropriate under Rules 56(c) and (e), Fed. R. Civ. P.[2]

For purposes of ruling on defendant's motion, the Court finds that the facts set forth in defendant's affidavit are undisputed.  See Affidavit of Kim Ruhnke ("Ruhnke Affidavit"), Exhibit 1 to Memorandum In Support Of Defendant's Motion For Summary Judgment (Doc. #173) filed May 15, 2006.  In making this determination, the Court has carefully reviewed the Declaration of Steven Kent Bloom ("Plaintiff's Declaration") (Doc. #16) filed October 3, 2002 ¶ 20.

Plaintiff claims that defendant arbitrarily and capriciously applied IMPP 11-101 or, alternatively, that defendant applied the regulation "in a retaliatory fashion."  Pretrial Order (Doc. #168) at 2.[3]

_____

[2]    Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not rest on his pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.  In ruling on defendant's motion, the Court views the record in a light most favorable plaintiff.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).

[3]    Based on the pretrial order, it appears that plaintiff challenges only defendant's application of IMPP 11-101, and not the constitutionality of the regulation itself.  To the extent plaintiff may challenge the constitutionality of IMPP 11-101, on this record the Court finds that   the regulation is not unconstitutional.  See Beard v. Banks, --- U.S. ----, 126 S. Ct. 2572, 2578 (2006) (court must afford deference to views of prison authorities in matters of professional judgment); Turner v. Safley, 482 U.S. 78, 87 (restrictive prison regulation permissible  if reasonably related to legitimate penological interests).

(continued...)

3

IMPP 11-101 sets forth a comprehensive system which provides for different levels of inmate privileges and incentives.  Under the system, inmates cannot spend more than $30.00 per pay period on outgoing funds.[4]  The KDOC has deemed that IMPP 11-101 provides "an effective means of managing the offender population and reinforcing constructive behavioral changes in offenders."  Report in "Martinez v. Aaron" Investigation (Doc. #29) filed January 13, 2003 at 2 (quoting IMPP 11-101 Policy).

Defendant contends that plaintiff has not shown sufficient evidence to prove his claims.  The Court agrees.  In reaching this conclusion, the Court considers each of plaintiff's allegations in the pretrial order.

First, plaintiff alleges that defendant violated his right to free speech by denying him the opportunity to purchase copies of legal cases from the Kansas University Law Library.  Specifically, plaintiff states that

> [h]e made his first request for copies on September 24, 2001.  This request was denied because it "exceeds $30.00."  He made a second request on October 1, 2001.  K. Ruhnke is cited on this request as making the denial.  Plaintiff's two Form 9s and grievance shows that he had made other "legal cost expenditures" which were approved in the same period.  He had expended his maximum limit when these two expenditures were approved.  Ruhnke's denial was a capricious misuse of policy to deny plaintiff the opportunity to better himself, using freedom of speech as tool.

Pretrial Order (Doc. #168) at 5.  The record establishes that defendant denied the requests pursuant to IMPP 11-101, because plaintiff had already spent $29.35 in outgoing funds for the relevant pay period. Ruhnke Affidavit ¶ 6.  Plaintiff has not shown that the denial was arbitrary, capricious or retaliatory.

---

[3](...continued)

[4]     IMPP 11-101 contains certain exceptions to the limit which do not apply here.  See IMPP 11-101, Section VI(B).  The regulation further restricts outgoing funds for inmates at the Intake Level and Level I.  See IMPP 11-101, Section VI(A).  Aside from outgoing funds, IMPP 11-101 separately limits canteen expenditures depending on the inmate's incentive level.  Id., Sections III(A)(2), V(1)(a)

Second, plaintiff claims that defendant

> "falsely raises the requested postal metering rate to 'certified' and then falsely claims that I have exceeded the IMPP 11-101 $30 limit." (doc. 16, p. 7, par. 20, 21).  This gives staff "false excuse" to refuse to mail out legal mail in case No. 01-CV-3382-GTV, U.S. District Court for Kansas, in which plaintiff recovered $5,836.80 (doc. 17, pp. 10, 11, 13, 15, 16).

Pretrial Order (Doc. #168) at 5.  To the extent this claim relates to plaintiff's claim of denial of access to the courts, that claim is no longer in the case.  See Bloom v. Ruhnke, No. 02-3032, 42 Fed. Appx. 365, 366-67 (10th Cir. 2002).  To the extent it relates to the remaining claims, plaintiff has not shown that Ruhnke engaged in such conduct.  Plaintiff's declaration states only that such action was taken by "[a]n UNK staff member of the Accounting Dept."  Plaintiff's Declaration ¶ 20.  Moreover, Ruhnke's affidavit establishes that if an inmate does not have sufficient funds to pay for certified mail, the envelope can still go out as legal postage.  Ruhnke Affidavit ¶ 5.

Third, plaintiff asserts that defendant "refuses to mail out 'legal mail'; making absurd claim that Bloom is to weigh and meter his mail from within his cell (doc. 16, p. 8)."  Pretrial Order (Doc. #168) at 5.  To the extent this claim relates to plaintiff's claim of denial of access to the courts, that claim is no longer in the case.  See Bloom, 42 Fed. Appx. at 366-67.  To the extent it relates to the remaining claims, plaintiff has not shown that Ruhnke engaged in such conduct.  Plaintiff's declaration states only that such action was taken by "UNK staff."  Plaintiff's Declaration at 8.  Moreover, Ruhnke's affidavit establishes that she has no responsibility for mailing inmate mail.  Ruhnke Affidavit ¶ 5.

Fourth, plaintiff complains that defendant falsely used IMPP 11-101 "to mail-out 'legal mail'; falsely claiming Bloom 'X exceeds $30 limit,' when in fact Bloom had expended a measly $1.00 (doc. 16, p. 9, par. 23, 24)."  Pretrial Order (Doc. #168) at 6.  To the extent this claim relates to plaintiff's claim of denial

5

of access to the courts, that claim is no longer in the case. See Bloom, 42 Fed. Appx. at 366-67. To the extent it relates to the remaining claims, plaintiff has not shown that Ruhnke engaged in such conduct. See Plaintiff's Declaration ¶¶ 23, 24. Moreover, plaintiff's declaration admits that the correspondence was eventually mailed. See id. ¶ 24.

Fifth, plaintiff contends that "he is 'threatened with disciplinary punishment'; in retaliation for requesting that DOC policy IMPP 11-101 be correctly applied (doc. 16, par. 30, 31)." Pretrial Order (Doc. #168) at 6. Plaintiff has not shown that Ruhnke engaged in such conduct. His declaration states that David Ferris has threatened him with disciplinary punishment. See Plaintiff's Declaration ¶ 31.

Sixth, plaintiff alleges that

"yet again" IMPP 11-101 is falsely used by K. Ruhnke to deny freedom of speech. Bloom has made "zero" money expenditures, when his request to purchase copies of cases from Kansas Law Library is denied. This on May 6, 2002, 7 months after defendant's first refusal (doc. 16, p. 14, par. 32). This is ongoing retaliations for filing grievances and instant action.

Pretrial Order (Doc. #168) at 6. Plaintiff has not shown that Ruhnke engaged in such conduct. His declaration states only that such action was taken by "UNK staff." Plaintiff's Declaration ¶ 32. Moreover, Ruhnke's affidavit establishes that she approved the payment on May 6, 2002. Ruhnke Affidavit ¶ 5. Indeed, plaintiff's own exhibit reflects that it was approved by a unit team manager and funds were withdrawn on May 6, 2002. See Plaintiff's Exhibits (Doc. #17) at 32.[5]

---

[5]     The exhibit also states that it is being returned because it exceeds $30.00. This notation, however, standing alone, is not sufficient to create a genuine issue of material fact in light of Ruhnke's affidavit and supporting documents showing that payment was made. See Anderson, 477 U.S. at 250-51 (summary judgment may be granted if non-moving party's evidence merely colorable or not significantly probative).

Seventh, plaintiff claims that

DOC officials obdurately refuse to implement IMPP 11-101 as it is written.  Request expend monies to "Clerk, Court of Appeals," purpose, "copies court records; legal fee," (doc. 16, p. 16), is delayed for 12 days, more than 1/3 pay period.  Bloom claims this unjust delay was deliberate; as legal mailings show Bloom in appeal before 10 C.C.A., therefore officials deny.

Pretrial Order (Doc. #168) at 6.  To the extent this claim relates to plaintiff's claim of denial of access to the courts, that claim is no longer in the case.  See Bloom, 42 Fed. Appx. at 366-67.  To the extent it relates to the remaining claims, plaintiff has not shown that Ruhnke engaged in such conduct.   His declaration states only that such action was taken by "UNK Accounting staff."  Plaintiff's Declaration ¶ 34.

Eighth, plaintiff contends that

these denials and delays are deliberate and malicious harassments; tacitly soliciting a negative response (doc. #16, p. 17, written late September 2002).  2005 Bloom is given 5 disciplinary violations; all of which Bloom will claim in another 1983 case were results of harassing attacks by DOC officials.

Pretrial Order (Doc. #168) at 6.  These allegations apparently relate to the previous paragraph and/or another lawsuit.  Plaintiff has not shown that Ruhnke engaged in such conduct.

Ninth, plaintiff asserts that

"UNK staff has again [8-30-2002] unjustly imposed said KSDOC rule [IMPP 11-101] to unjustly restrain my attempts to conduct legal research."  (doc. 16, p. 18, last par.)  A merchant cannot fulfill Bloom's purchase request.  Bloom claims this request does not reduce his expenditure limit.  The "payee."  Need you guess?  "KS. Univ. Law Library." (doc. 16, p. 18, mid. pg.).

Pretrial Order (Doc. #168) at 7.  Plaintiff has not shown that Ruhnke engaged in such conduct.  Ruhnke's affidavit establishes that on August 30, 2002, plaintiff was housed at El Dorado Correctional Facility and Ruhnke had no involvement with his inmate account.  Ruhnke Affidavit ¶ 10.

Tenth, plaintiff claims that

Yet again, IMPP 11-101 is falsely used by K. Ruhnke, 5-29-02, to deny U.S. constitutional right freedom of speech. Bloom has expended $18.45 when his request to expend $4.00 is denied, again to KS. Univ. L. Lib. Record of Bloom's complaints to U.T.L. Beckham is made when Beckham declares, "sent out to business office for check on 5-28-02." (Doc. 17, p. 34). It is fact that Beckham reviewed Bloom's expenditures, that's part of his job. Bloom's request is denied by falsely claiming Bloom, "X exceeds I/Ms period-to-date outgoing fund limit. 5/29/02 K m m." Is this Defendant K. Ruhnke? *See* doc. 16, p. 15.

Pretrial Order (Doc. #168) at 7. Plaintiff has not shown that Ruhnke engaged in such conduct. Ruhnke's affidavit establishes that she did not conduct the spending limit review for this request. Ruhnke's Affidavit ¶ 8.

Eleventh, plaintiff contends that he

is unlawfully punished, retaliated against, subsequent his filing "grievance," 9-3-02, (doc. 17, p. 45); for violation IMPP 11-101, refuse allow purchase, "copy legal case," (doc. 17, p. 42). Bloom's letter, 9-5-02, appealing "griev." to warden, with supporting exhibits is "perfunctorily denied," 9-11-02. Bloom does not appeal to S.O.C.; this is repeat of "griev.", AA200-20214, 10-18-01, which started instant action. Bloom is moved out of air-conditioned cell house to less desirable, poorly ventilated cell house, and celled with medium custody I/Ms, another DOC policy violation.

Pretrial Order (Doc. #168) at 7. Plaintiff has not shown that Ruhnke engaged in such conduct. Ruhnke's affidavit establishes that in September of 2002, plaintiff was housed at El Dorado Correctional Facility and Ruhnke was not involved with his inmate account or cell house assignment. Ruhnke Affidavit ¶¶ 10-11.

Twelfth, plaintiff states that

Bloom on "Level 1"; IMPP 11-101, p. 10, declares I/M will not purchase books. Bloom allowed purchase and receive "Prison Legal News." This was challenged, (doc. 146, 2 Appendix, p. 8); and, overruled.

Pretrial Order (Doc. #168) at 7-8. This allegation appears unrelated to plaintiff's claims in this case.

8

Moreover, plaintiff has not shown that Ruhnke engaged in such conduct.

Finally, plaintiff alleges that he "has always claimed denial access legal research materials to perfect appeal (doc. 1, appeal griev. #AA20020214, 10-16-2001)." Pretrial Order (Doc. #168) at 8. This allegation appears unrelated to plaintiff's claims in this case.[6] Moreover, plaintiff has not shown that it involves conduct by Ruhnke.

On this record, defendant is entitled to summary judgment on plaintiff's claims.

**IT IS THEREFORE ORDERED** that plaintiff's Motion For Judgment On The Pleadings (Doc. #170) filed May 11, 2006 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant's Motion For Summary Judgment (Doc. #172) filed May 15, 2006 be and hereby is **SUSTAINED.** The Clerk is directed to enter judgment in favor of K. Ruhnke on all claims.

Dated this 9th day of August, 2006 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

---

[6]     To the extent this claim may relate to plaintiff's claim of denial of access to the courts, that claim is no longer in the case. See Bloom, 42 Fed. Appx. at 366-67.

9